Nicholson, C. J.,
delivered the opinion of the Court.
This is an original bill in the nature of a bill of review. Its object is to review a decree of the Chancery Court at Dandridge, rendered on the 12th day of April, 1865, in the case of Enoch and Benjamin Marshall against Wm. J. Johnson.
The allegations of this bill are, that, ou the 6th of February, 1865, Enoch and Benjamin Marshall filed their attachment bill against "W. J. Johnson, who was then a prisoner of war, at Johnson’s Island, setting out an indebtedness of about $800.00, and praying an attachment and sale of a tract of land described in the pleadings, as the property of said Johnson. That an attachment was levied on the land, and a decree made for its sale. That the land was sold on a credit of sis months, free from the equity of redemption, and was purchased by said Enoch Marshall, at $800.00, which amount was credited on the. debt of Enoch and Benjamin Marshall. It is further alleged, that, at the time of the levy and sale aforesaid, the legal title to said land was in Benj. R. King, and that W. J. Johnson *32 only held a title-bond therefor, a balance of about $200 being still due to King, on the purchase money; that King was not a party to the bill of attachment of Enoch and Benj. Marshall, and that the attachment bill was filed under the belief that the legal title was in Johnson, and that the land was attached as his property.
The prayer of the bill is, that the sale of the land under the bill of the Marshall’s be declared null and void, and that it be subjected to complainant’s claim. Enoch and Benjamin Marshall, in their answers, admit most of the allegations in the bill, and add, that when they found out, after the sale of the land, that there was a balance of purchase money due to King, they paid the same to him before the present bill was filed. They make no response to the allegation that Johnson was a prisoner of war, at Johnson’s Island, when they attached the land and procured a decree for its sale. They admit, that, when they filed their attachment bill, they did not know that Johnson owed any part of the purchase money, nor did they know that he had no legal title.
From the allegations of the bill, and the admissions of the answers, it is apparent, that, when the attachment of Enoch and Benj. Marshall was levied on the land of Johnson, he had only an equitable title, the legal title being in King. But it was the legal and not the equitable title which was attached and sold, and purchased by Marshall. It follows that he obtained no legal title by his purchase, and unless the attachment fixed a lien on Johnson’s equitable interest in the land, no title whatever was acquired by the purchase.
*33 it is well settled, that, whatever right or interest in property of a debtor, whether of a legal or equitable nature, would be affected by the lien of a judgment or execution, will, in like manner, be affected and made subject by the lien of an attachment. Harvey v. Champion, 11 Hum., 569.
It is equally well settled, ever since the case of Shute v. Harder, 1 Yer., 3, that the lien of a judgment or execution operates only on the legal title of lands, except in the cases provided for in 2084 of the Code. It follows that the levy of the attachment upon the land created - no lien on Johnson’s equitable interest, unless such’ lien was created by virtue of 3500 of the Code. By this section, attachments may be levied upon any real or personal property, of either a legal or equitable nature, in which the defendant has an interest. But, in order that an equitable interest in land may be subjected by attachment, the bill must be framed with that view, and the allegation must give to the Court jurisdiction to effectuate the object sought to be ■ accomplished. It is not doubted that, if Enoch and Benjamin Marshall had known that Johnson had only an equitable interest, and that King had the legal estate in the land, they could have subjected Johnson’s equitable interest, by making the proper allegations to give the Court jurisdiction, and by making King and Johnson both defendants. But upon their bill, simply alleging that Johnson was the owner of the land, and praying to have it subjected to sale, the only decree that could properly be made was to order a sale of the land; and such decree and sale, according to the allegations ' and prayer of the bill, would only communicate to the purchaser the *34 legal title of Johnson. But as Johnson had no legal title, and as the decree did not operate on his equitable interest, the purchaser at the sale acquired no title.
It is manifest that the remedy by attachment has been greatly favored and extended by the late legislation of our State. Sections 3461 and 3500 of the Code greatly enlarge and extend the remedy by original attachment; but ■when properly construed, they do not alter the fundamental principles of equity jurisdiction, nor do they destroy the long-established rules which distinguish the proceedings in courts of law and of equity, in the exercise of their respective jurisdictions. It was not intended by §. 3500 that attachments issued by courts of law might be levied on personal or real property of an equitable nature. Such a construction would destroy the harmony and symmetry of our judicial system, by converting the courts of law into courts of equity, in the enforcement of the remedy by .'attachment. The object of the Legislature was to give courts of law power to enforce the remedy by attachment, as to all property of a legal nature, and to give to courts of equity the power to enforce the remedy by attachment, as to all property,, real and personal, either of a legal or equitable nature, debts or choses in action, whether due or not due, in which the defendant has an interest.’ By this construction we carry out the object of the Legislature, in extending and encouraging the remedy by attachment, and at the same time preserve the jurisdiction of each court within its appropriate sphere.
If Enoch Marshall obtained no title, legal or equitable, by his purchase under the attachment sale, the next *35 inquiry is, as to the legal effect of his payment to King of the residue of the purchase money due to him. This payment was made before complainants filed their bill; but neither then nor since, has King conveyed to him the legal title; that still continues in King. It follows that the only effect of the payment was to substitute Marshall to the vendor’s lien. It left the legal title still outstanding in King. It gives to Marshall the prior right of satisfaction for the amount so paid; but' it does not remedy the defect in his title.
As Marshall obtained no title to the land, either by his purchase, or by his payment of the residue of the purchase money, the equitable interest of Johnson m the land, was subject to be reached by complainants for the satisfaction of their claims, and by filing their bill, ana making the proper allegations and parties, they have secured the right to appropriate the equitable interest oí Johnson to their debts, subject only to the amount r/ the purchase money paid by Marshall.
The decree below will, therefore, be reversed; the purchase of the land by Enoch Marshall set aside; and the amount of his bid, which was credited on the judgment,' will not operate as a satisfaction of said judgment; the claims of complainants will be ascertained by a report of the Clerk and Master of this Court, the land be sold, and the proceeds applied, first, to the costs of this Court and the court below; next, to the reimbursement of Enoch Marshall of the amount, with interest, paid to King, and the residue to the satisfaction of the claims of complainants.